UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KEVIN L. HICKS,

Plaintiff,

- against -

**MEMORANDUM & ORDER**
20-CV-1692 (PKC) (JRC)

UNITED STATES OF AMERICA and U.S. DEPARTMENT OF HOMELAND SECURITY,

Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Kevin L. Hicks has brought this negligence action against Defendants United States of America (the "United States") and U.S. Department of Homeland Security ("DHS") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.*, for personal injuries sustained as a result of an automobile collision between Plaintiff's vehicle and a DHS vehicle in Queens, New York on January 10, 2019. Defendants United States and DHS have filed a joint motion seeking summary judgment as to Plaintiff's claim against the United States and dismissal for lack of subject matter jurisdiction as to DHS. For the reasons explained below, the Court denies the United States' motion for summary judgment and grants DHS's motion for dismissal.

## BACKGROUND[1]

### I. The Vehicle Collision at Issue (the "2019 Accident")

On January 10, 2019, Plaintiff was working as a driver for New Penn Motor Express LLC ("New Penn"), a regional motor carrier. (Defs.' Statement Pursuant Local Civil Rule 56.1 ("Defs.'

---

[1] Except as otherwise noted, the facts stated in this section are taken from the parties' Local Rule 56.1 submissions and the record evidence cited therein. (*See* Defs.' Statement Pursuant Local

56.1”), Dkt. 58, ¶ 1.) That day, Plaintiff was operating a tractor trailer owned by New Penn (the “Tractor Trailer”) in New York City. (*Id.* ¶ 5.) Plaintiff’s Tractor Trailer drove along 156th Street to its intersection with South Conduit Avenue in Queens[2], which was controlled by a stop sign. (*Id.* ¶ 6.) Plaintiff’s Tractor Trailer slowed down to a stop in the intersection as vehicular traffic steadily flowed along South Conduit Avenue. (*Id.*) South Conduit Avenue is a one-way street such that Plaintiff’s only next direction would be to turn right. (*See* Pl.’s Local Civil Rule 56.1 (“Pl.’s 56.1”), Dkt. 63, ¶¶ 6, 8.). As Plaintiff’s Tractor Trailer turned right from 156th Street onto South Conduit Avenue, (Defs.’ 56.1, Dkt. 58, ¶ 7), an SUV pulled up alongside the right side of Plaintiff’s Tractor Trailor into an area of the roadway which was not designated as an actual lane for moving traffic, (*id.* ¶ 8; Pl.’s 56.1, Dkt. 63, ¶ 8). The SUV was a 2018 Ford Explorer operated by Gina Reneau, an employee of U.S. Customs and Border Protection (“CBP”). (Defs.’ 56.1, Dkt. 58, ¶ 9.) There was a marked size disparity between the Tractor Trailer and the SUV. (*Id.* ¶ 10.) As Plaintiff executed the right turn, the right rear portion of the Tractor Trailer made contact with the front left portion of the SUV. (*Id.* ¶ 11.) The Tractor Trailer briefly continued turning right, and then came to a stop on South Conduit Avenue a short distance from the intersection of 156th Street and South Conduit Avenue. (*Id.* ¶ 12.) Ms. Reneau admitted at her deposition that Plaintiff’s Tractor Trailer would have been able to make the right turn without any incident, had

---

Civil Rule 56.1 (“Defs.’56.1”), Dkt. 58; Pl.’s Local Civil Rule 56.1 (“Pl.’s 56.1”), Dkt. 63; Defs.’ Consolidated Rule 56.1 Statement (“Consolidated 56.1”), Dkt. 70-1.) Where a party’s Rule 56.1 Statement is cited and there is no contrary evidence in the record, the Court deems that fact to be undisputed and admitted. Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that the Court has deemed the underlying factual allegation undisputed. Any citation to a party’s Rule 56.1 Statement incorporates by reference the documents cited therein unless otherwise noted. Where relevant, however, the Court cites directly to the underlying document.

[2] Though not specified in the United States’ 56.1 Statement, Defendants’ Answer admitted the fact that the intersection where the accident occurred is in Queens, (*see* Answer, Dkt. 9, ¶ 22), which is in the Eastern District of New York.

Ms. Reneau not driven her vehicle into its position on the inside right of the Tractor Trailer. (Pl.'s 56.1, Dkt. 63, ¶ 8.)

Plaintiff was ambulatory after the accident and was "able to leave the Tractor Trailer to inspect the damage to the vehicles." (Defs.' 56.1, Dkt. 58, ¶ 13.) The SUV had "multiple dents and scrapes to its front driver's side portion, while the Tractor Trailer had only scrape marks." (*Id.*) Immediately after the accident, Plaintiff was not experiencing any pain and told emergency medical technicians ("EMTs") on the scene that he was "fine" and "not injured." (*Id.* ¶ 16.) Plaintiff reported the accident to a supervisor that same day. (*Id.* ¶ 17.) "He did not report any injuries in his contemporaneous reporting of the [a]ccident." (*Id.*) Meanwhile, Ms. Reneau testified that the force of the impact between the Tractor Trailer and her SUV was "medium." (Dep. of Gina Reneau ("Reneau Dep."), Dkt. 65-2, at 104:18–105:1.) Ms. Reneau was taken from the scene of the accident by ambulance, complaining of discomfort to her left shoulder and left leg. (*Id.* at 111:17–112:13).

## II. Plaintiff's Prior Medical History

In 2014, Plaintiff was involved in another motor vehicle collision (the "2014 Accident"). "On the evening of October 25, 2014, around 5:00 p.m. in South Ozone Park, New York, Plaintiff's car was rear-ended at a stop sign and partially spun around." (Defs.' 56.1, Dkt. 58, ¶ 27.) Several hours later, around 9:31 p.m., Plaintiff arrived at Jamaica Hospital Medical Center ("JHMC") by car. (*Id.* ¶ 29.) "He told JHMC medical personnel that he was experiencing severe, aching pain to his lumbar spine after a motor vehicle collision." (*Id.*.) Plaintiff thereafter received physical therapy at Park Health Center and Diagnostics ("Park Health") in South Ozone Park, New York, under the care of Dr. Jamil Abraham. (*Id.* ¶ 31.) During Plaintiff's initial evaluation with Dr. Abraham on October 27, 2014, he described "sharp, constant pain to his lumbar spine that worsened with movement." (*Id.*) "A physical examination revealed tenderness to his lumbar spine

and a decreased range of motion." (*Id.*) Plaintiff rated his back pain as an "8" on a 1–10 pain scale (with 10 being the most severe) during his initial evaluation. (*Id.* ¶¶ 31–32.) "Plaintiff regularly showed up at Park Health between October 2014 and January 2015 for lower back pain treatment, including physical therapy and acupuncture." (*Id.* ¶ 32.) He frequently rated the pain to his lumbar spine as a "7" or an "8" on a 1–10 pain scale during visits, and often recalled the pain being a "10" on a 1–10 pain scale at its worst. (*Id.*) "As of January 19, 2015, Dr. Abraham maintained that Plaintiff had suffered (among other things), '[c]erebral [c]oncussion,' '[w]hiplash syndrome,' '[l]ow [b]ack [d]erangement,' '[c]ervicular radiculopathy,' and '[l]umbar [r]adiculopathy' as a result of the 2014 Accident." (*Id.* ¶ 33 (alterations in original).) After completing his medical treatment in connection with the 2014 Accident, Plaintiff was able to return to full-time employment as a truck driver and continued full-time employment until the 2019 Accident. (Pl.'s 56.1, Dkt. 63, ¶ 33.)

In the interim, however, in 2017, Plaintiff was involved in another motor vehicle collision (the "2017 Accident"). On the evening of October 3, 2017, at approximately 11:00 p.m., Plaintiff was driving a tractor trailer on the Cross Bronx Expressway in the Bronx, New York when a car struck the side of Plaintiff's tractor trailer. (Defs.' 56.1, Dkt. 58, ¶ 19.) "Plaintiff was transported by ambulance from the scene of the collision to St. Barnabas Hospital in [t]he Bronx." (*Id.*) "Among other things, he reported to EMTs that he was experiencing back pain." (*Id.*) Plaintiff was admitted to St. Barnabas Hospital on October 4, 2017 at around 1:17 a.m. (*Id.* ¶ 20.) He was brought to the emergency department by stretcher, and EMTs gave hospital staff a report of Plaintiff's account of the collision, including Plaintiff's stated back pain. (*Id.*) However, Plaintiff did not receive treatment at St. Barnabas, as staff were unable to locate him in the emergency department. (*Id.*) That same day, Plaintiff arrived at the JHMC emergency room as a walk-in at

around 10:22 a.m. (*Id.* ¶ 21.) Plaintiff told JHMC medical personnel that "he was in a motor vehicle collision the day prior and was experiencing pain to his 'whole back.'" (*Id.*) He described the pain as "moderate, aching pain that came on suddenly and was worsening." (*Id.*) At the same time, however, he rated the back pain as a "10" on a 1–10 pain scale. (*Id.*) "JHMC personnel ordered X-rays of Plaintiff's thoracic and cervical spine, which revealed moderate degenerative changes at C5-C7, mild degenerative changes at other levels of Plaintiff's cervical spine, and minor degenerative changes to Plaintiff's thoracic spine." (*Id.* ¶ 22.)

There is no evidence in the record indicating that Plaintiff received any treatment thereafter in connection with the 2017 Accident. In fact, the only reference to medical records between October 5, 2017 (the day after the 2017 Accident) and January 9, 2019 (the day before the 2019 Accident) is a note that a July 2018 "X-ray [of Plaintiff's] Lumbar Spine" showed "[n]o significant abnormalities," (*see* Report Charla Fischer, M.D. ("Fischer Report"), Dkt. 61-2, at 6–9 (summarizing medical records available)), and "minimal disc degeneration," (*id.* at 10).[3] During this period, Plaintiff was working full-time as a truck driver, (*see* Pl.'s Dep., Dkt. 65-1, at 26:16–24, 28:5–7), and he reports having returned to exercising and other normal activities of daily living following the 2017 Accident, (*see* Report Mark S. McMahon, M.D. ("McMahon Report"), Dkt. 69-2, at 5).

## III. Plaintiff's Medical Treatment After the 2019 Accident

Plaintiff first saw Dr. Carlos Castro at Comprehensive Orthopedic & Spine Care ("Comprehensive Ortho") on Monday, January 14, 2019, four days after the 2019 Accident. (Defs.' 56.1, Dkt. 58, ¶ 35.) "His chief complaints were of lower back pain and numbness to his

[3] There are also references to medical treatment during this time period that pertain to an entirely unrelated medical condition. (*See* Fischer Report, Dkt. 61-2, at 7 (noting records in 2017 and 2018 related to urology).)

right leg." (*Id.*) "When Plaintiff first presented to Dr. Castro, Plaintiff told him that he had suffered from pain and stiffness in his lumbar spine for about a year prior to his visit, which had worsened in the preceding days." (*Id.* ¶ 36.) "After a physical examination, Dr. Castro ordered [a magnetic resonance imaging ('MRI')] and X-ray of Plaintiff's lumbar spine and recommended that Plaintiff go to an emergency room." (*Id.* ¶ 35.) On January 15, 2019, at Dr. Castro's suggestion, Plaintiff underwent an MRI. (*Id.* ¶ 37.) That MRI showed, among other things, (a) "disc bulging and bilateral facet arthrosis, associated with an intraspinal synovial cyst arising from the right facet joint" at L4-L5 along with "moderate L4 foraminal stenosis bilaterally"; (b) "disc bulging and facet hypertrophy" at L3-L4 along with "moderate L3 foraminal stenosis bilaterally"; (c) "posterior disc bulging . . . resulting in moderate thecal sac stenosis" at L2-L3; (d) "disc herniation" at L1-L2; and (e) "disc bulging" and "disc herniation" at L5-S1 with "moderate foraminal stenosis bilaterally." (*Id.*) "Dr. Castro reviewed Plaintiff's lumbar spine MRI and found severe stenosis at L3, L4, and L4-L5." (*Id.* ¶ 38.) "He diagnosed Plaintiff with lumbar disc degeneration and lumbar radiculopathy, and again recommended that Plaintiff go to an emergency room." (*Id.*) Specifically, Dr. Castro recommended an "L3-L5 decompression in light of a failure of physical therapy.'" (*Id.*)

"On the evening of January 21, 2019, Plaintiff arrived at the Emergency Department of Lenox Hill Hospital, located in New York, New York." (*Id.* ¶39.) At the time, he rated his back pain at a "3" on a 1–10 pain scale. (*Id.*) "He reported the reason for his visit as 'back spasms' and 'pain run[n]ing down right legs.'" (*Id.* (alteration in original).) "Plaintiff's lumbar spine was X-rayed that evening to rule out a fracture." (*Id.* ¶ 40.) "The X-ray showed that Plaintiff's 'lumbar alignment was intact,' and while there was 'mild loss of intervertebral disc space height at the L5/S1 level[,] [t]he vertebral body heights and rest of the intervertebral disc spaces [were] within

normal limits.'" (*Id.* (alteration in original).) "No signs of fracture were found on the X-ray." (*Id.*)

"On January 22, 2019, Dr. Castro performed a lumbar decompression and laminectomy on Plaintiff at L3-L4 and L4-L5, and excised a facet cyst at the right side of L4-L5 facet joint," (the "Surgery"). (*Id.* ¶ 41.) "The procedure was performed without incident, and Plaintiff was brought to a recovery room in stable condition." (*Id.*) "Between January 23, 2019 and January 25, 2019, Plaintiff's pain was brought under control with a pain medication regimen," (*id.* ¶ 42), and he was discharged from the hospital on January 25, 2019, (*id.* ¶ 43).[4]

## IV. The United States' Experts

The United States relies on two experts in support of its motion for summary judgment: Charla Fischer, MD ("Dr. Fischer") and Elaine R. Serina, Ph.D., P.E. ("Dr. Serina").

### A. Dr. Fischer

Dr. Fischer is an orthopedic surgeon with two decades of experience in the field. (*See* Dkt. 61-1, at ECF[5] 2.) Dr. Fischer examined Plaintiff on December 13, 2023 in connection with this lawsuit and authored a report on Plaintiff's spinal conditions on March 29, 2024 based on the December 2023 examination and a review of Plaintiff's medical records. (Decl. Charla Fischer, M.D. ("Fischer Decl."), Dkt. 61, ¶ 3.) Dr. Fischer concluded that Plaintiff "had no acute injury to the cervical spine, pre-existing and established cervical and lumbar disc degeneration and pain,

[4] The Court does not recount Plaintiff's further post-2019 Accident medical history. Although, as discussed *infra*, Plaintiff's primary medical expert, Dr. McMahon, relied in part on the substantial ongoing medical care that Plaintiff has required since the 2019 Accident in forming his causation opinion, the details of Plaintiff's post-accident medical care do not affect the Court's determination that the United States is not entitled to summary judgment on the causation issue.

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

and suffered a temporary aggravation of a pre-existing and established lumbar paraspinal sprain after [the 2019 Accident]." (*Id.* ¶ 7.) Dr. Fischer noted that the "temporary aggravation" injury, resulting in tearing and muscle cramping, likely caused most of Plaintiff's pain, but that "this type of issue usually resolves within three to six months of onset" and similarly situated patients "generally remain[ ] able to perform all activities of daily living[,] including driving." (*Id.*)

As to the cause of Plaintiff's "loss of disc height, mild bulging, facet cyst, stenosis, and disc herniation," Dr. Fischer opined that these were all "consistent with the sort of chronic, slow-developing degeneration seen in patients" of Plaintiff's age and "not consistent with acute trauma." (*Id.* ¶ 8.) Specifically, Dr. Fischer explained that a "facet cyst develops slowly over time due to facet arthrosis and synovial cyst formation," and that the "stenosis at L3-4 was due to disc bulging and facet arthrosis," which are "both [ ] changes that take time to develop." (Fischer Report, Dkt. 61-2, at 11.) Dr. Fischer explained that, by contrast, "if a patient was experiencing spinal issues due to acute trauma"—such as a car accident—one "would expect to see a fracture or evidence of bleeding . . . , none of which was present on [Plaintiff's medical] imaging." (*See* Fischer Decl., Dkt. 61, ¶ 8.) As to Plaintiff having undergone "a laminectomy and facet cyst excision very acutely after the car accident," Dr. Fischer opined that the timing was only "coincidental since the MRI was done right after the accident." (Fischer Report, Dkt. 61-2, at 11–12.) Thus, the timing of the Surgery did not affect Dr. Fischer's conclusion that Plaintiff "sustained no injury to the cervical spine" as a result of the Accident and experienced only a "temporary aggravation" of his pre-existing lumbar strain that "has since been resolved." (*Id.* at 12.)

**B. Dr. Serina**

Dr. Serina is a professional engineer and an expert in mechanical engineering and biomechanics. (Decl. Elaine R. Serina, Ph.D., P.E. ("Serina Decl."), Dkt. 62, ¶ 2.) Dr. Serina reviewed "records and documents associated with Plaintiff['s] . . . claims of injuries allegedly

resulting from . . . the [2019] [A]ccident." (*Id.* ¶ 3.) Specifically, "the most critical materials reviewed were the video of the Accident, . . . photographs of the scene of the Accident, . . . and several photographs of the 2018 Ford Explorer [SUV] involved in the Accident." (*Id.* ¶ 4.)

Based on her review, Dr. Serina concluded that "the tractor-trailer operated by Plaintiff experienced an extremely low-speed sideswipe impact to the right side of the vehicle in the [2019 Accident] with a velocity change (also known as 'delta-V') of less than 1 mile per hour." (*Id.* ¶ 5.) She also found that in the 2019 Accident, "the movements of the lumbar spine of Plaintiff (the driver of the 2005 Mack tractor[-trailor]) would be minimal. Any movement of the lumbar spine due to the impact forces would remain well within the normal range of motion." (*Id.* ¶ 6.) As a result, Dr. Serina concluded that "due to the minimal movement of the low back and extremely low forces in the joints, the mechanism for structural damage to the tissues of the lumbar spine (such as the intervertebral discs) was not present during the [2019 Accident]." (*Id.* ¶ 8.)

## V. Plaintiff's Experts

Plaintiff relies, to varying degrees, on the expert medical opinions of four doctors who examined Plaintiff and/or reviewed his medical records relating to the 2019 Accident.

### A. Dr. Mark McMahon

Plaintiff principally relies on the expert opinion of Mark S. McMahon, M.D. ("Dr. McMahon"), a board-certified orthopedic surgeon. (Decl. Mark S. McMahon, M.D. ("McMahon Decl."), Dkt. 69, ¶ 1.) Dr. McMahon first examined Plaintiff on March 4, 2021, at which time he reviewed Plaintiff's medical records. (*Id.* ¶¶ 3–4, 11.) Dr. McMahon also conducted a follow-up evaluation of Plaintiff on March 23, 2022, (*id.* ¶ 16), at which time Dr. McMahon concluded that "there was a causal relationship between [the 2019 Accident] and [spinal injuries that Dr.

McMahon diagnosed]," (*id.* ¶ 19).[6] Dr. McMahon acknowledged Plaintiff's existing injuries from the 2014 and 2017 Accidents, but concluded that Plaintiff's "prior back condition was aggravated/exacerbated by the [2019 Accident] to the point that the pain became unbearable and the [Surgery] needed to be performed (12) days later." (*Id.*)

Dr. McMahon explained in his report that the following facts informed his causation conclusion: (1) "[f]ollowing the motor vehicle accident on October 3, 2017, [Plaintiff] returned to full time work as a truck driver, returned to exercising, and returned to his other activities of daily living"; (2) "[n]one of the doctors" that had treated Plaintiff "prior to his January 10, 2019 motor vehicle accident had ever discussed surgery with him"; and (3) Plaintiff "informed [Dr. McMahon] that he had not experienced any neck or lower back pain in the approximate fifteen (15) months prior to his January 10, 2019 motor vehicle accident." (*Id.* ¶ 12.)

Dr. McMahon summarized his conclusions as to causation as follows:

> Having reviewed [Plaintiff's] extensive medical records, [his] MRI images, and having examined [him] on multiple occasions . . . , it is my opinion, to a reasonable degree of medical certainty, that [Plaintiff's] injuries are the direct result of the [2019 Accident]. [Plaintiff] suffered acute injuries, as well as aggravation/exacerbation injuries to his lumbar spine as a result of the [2019 Accident].

(*Id.* ¶ 40.)

### B. Plaintiff's Other Medical Experts

On January 18, 2019, Plaintiff submitted a workers' compensation claim with the New York State Workers' Compensation Board in connection with the 2019 Accident. (Defs.' 56.1,

[6] Dr. McMahon's report is extensive, particularly with respect to the extent of Plaintiff's injuries. Since the extent of Plaintiff's injuries is not in dispute for the purposes of Defendants' motion for summary judgment, the Court recounts here only Dr. McMahon's findings as they relate to causation.

Dkt. 58, ¶ 44.) During the proceedings related to that claim, three medical experts opined on Plaintiff's condition and the cause of his injuries. The first, Joseph Weinstein, D.O., gave sworn testimony indicating that Plaintiff was injured on the job on January 10, 2019 when his truck and another car had a collision, jerking the trailer, causing him to experience lower back pain. (Workers' Compensation Board R. ("WCB R."), Dkt. 65-5, at 434–35.) However, Dr. Weinstein did not review any of Plaintiff's pre-accident medical records aside from his "partner's notes," and even stated that whether Plaintiff's injury was "exacerbated by th[e] [2019] [A]ccident" was "up to [the lawyers] to decide." (*Id.* at 431–32.) A second expert, Sean Lager, M.D., opined that there was a causal relationship between the January 10, 2019 collision and Plaintiff's injuries. (Decl. Sean Lager, M.D., F.A.A.O.S. ("Lager Decl."), Dkt. 68, ¶ 4; *see* WCB R., Dkt. 65-5, at 3 (describing Dr. Lager's records as part of workers' compensation record).) However, Dr. Lager exclusively reviewed Plaintiff's medical records from *after* the 2019 Accident, without any review of pre-2019 Accident medical records. (*See* Lager Decl., Dkt. 65-5, ¶¶ 5, 20, 28.) Finally, Thomas P. Nipper, M.D. opined that there was a causal relationship between the January 10, 2019 collision and Plaintiff's injuries. (Report of Thomas P. Nipper, M.D., Dkt. 66-4, ECF 1, 9.) However, when Plaintiff completed an initial questionnaire for Dr. Nipper, he checked the box "No" for "[h]ave you ever had neck or back problems in the past." (*Id.* at ECF 6.) Although Plaintiff did disclose a 2008 accident to Dr. Nipper, he did not the disclose the 2014 or 2017 Accidents, and, with respect to the 2008 accident, Plaintiff "describe[d] only receiving some treatment [without] details regarding sites injured." (*See id.* at ECF 6, 10.)

**LEGAL STANDARD**

Summary judgment may be granted only where there is "no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all

factual inferences in favor of the nonmoving party. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "To grant the motion, the court must determine that there is no genuine issue of material fact to be tried." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A genuine factual issue exists where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or by a factual argument based on "conjecture or surmise," *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). What is required from a nonmoving party "is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). The role of a court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).

**DISCUSSION**

The United States moves for summary judgment on Plaintiff's negligence claim under the FTCA. Meanwhile, DHS moves for dismissal for lack of subject-matter jurisdiction. For the reasons explained below, the United States' motion is denied, and DHS's motion is granted.

## I. The United States' Motion for Summary Judgment

### A. Applicable Law

Plaintiff brings his claim pursuant to the FTCA, which provides for recovery

> for . . . personal injury . . . caused by the negligent . . . act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The accident here occurred in New York City, so New York state tort law applies. *See id.* (determining liability under the FTCA "in accordance with the law of the place where the act or omission occurred."); *accord Comba v. United States*, 535 F. Supp. 3d 97, 105 (E.D.N.Y. 2021).

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Calix v. United* States, 23-7710-pr, 23-7721-pr, 2024 WL 3263361, at *3 (2d Cir. July 2, 2024) (summary order) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002); *accord Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 308 (2022). Additionally, "New York's 'no-fault' insurance laws place limits on any recovery by a person involved in an automobile accident." *Moore v. United States*, Nos. 21-CV-4971, 22-CV-0087 (RER) (PK), 2026 WL 546856, at *18 (E.D.N.Y. Feb. 9, 2026) (quoting *Madden v. Lee*, No. 01-CV-7856 (GWG), 2002 WL 31398951, at *3 (S.D.N.Y. Oct. 25, 2002)).

Article 51 of New York State's No-Fault Insurance Law ("N.Y. Ins. Law") provides that in a personal injury or negligence action between "covered persons," "there shall be no right of recovery for non-economic loss, [*e.g.*, pain and suffering,] except in the case of a serious injury, or for basic economic loss." N.Y. Ins. Law §§ 5104(a), 5102(c). Accordingly, to prevail on a

claim of negligence, a plaintiff must show that they suffered a "serious injury," as defined in the statute, as a result of the defendant's negligence. *See Pommells v. Perez*, 4 N.Y.3d 566, 571 (2005); *Johnson v. United States*, No. 21-CV-2851 (MKB), 2024 WL 1246503, at *10 (E.D.N.Y. Jan. 16, 2024) (dismissing negligence claim where plaintiff "failed to meet her burden to rebut [d]efendant's prima facie case that she suffered no serious injury, and therefore [p]laintiff [could not] survive summary judgment").

The No-Fault statute, as it existed in 2019, defined "serious injury" as follows:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d) (amended 2022, 2023, and 2026).

Even if a plaintiff can demonstrate a qualifying "serious injury,"[7] the claim must survive the No-Fault proximate cause burden-shifting framework. Under New York law, where a defendant moves for summary judgment on the ground that a collision did not cause "serious injury" within the meaning of the No-Fault statute, the defendant has the initial burden to submit "persuasive evidence" that the plaintiff's alleged pain and injuries were *not* caused by the collision. *See Pommells*, 4 N.Y.3d at 580. "If the defendant can do so, the burden shifts to the plaintiff, who must 'come forward with evidence addressing defendant's claimed lack of causation.'" *Wirt v.*

[7] Here, the United States does not contest for the purposes of summary judgment whether Plaintiff suffered a "serious injury," only whether the United States' acts were the proximate cause. (*See* Defs.' Reply Supp. Mot. Summ. J. ("Defs.' Reply"), Dkt. 70, at 3.) The United States, however, "reserves the right to argue [the serious injury] point at trial." (*Id.*)

*United States*, 732 F. App'x 32, 35 (2d Cir. 2018) (summary order) (quoting *Pommells,* 4 N.Y.3d at 580). A plaintiff cannot defeat summary judgment if his submission consists of expert opinion that fails to adequately address plaintiff's pre-existing conditions. *See Pommells*, 4 N.Y.3d at 574–75 (finding dismissal of plaintiff's No-Fault Law negligence complaint proper where plaintiff's expert opined that plaintiff's symptoms were "causally related to the [medical] history as stated," which included both the accident and plaintiff's kidney surgery, but "left wholly unanswered the question whether the claimed symptoms diagnosed" were specifically caused by the accident). If the plaintiff fails to provide such evidence, the defendant is entitled to summary judgment. *See Conde v. United States*, No. 19-CV-8506 (NRB), 2021 WL 3604701, at *6 (S.D.N.Y. Aug. 13, 2021) ("Where a plaintiff fails to rebut a defendant's prima facie showing that the plaintiff 'did not sustain a serious injury as the result of the subject accident, defendant is entitled to summary judgment.'" (quoting *Agard v. Bryant*, 805 N.Y.S.2d 348, 349 (1st Dep't 2005))). Conversely, if both parties have met their respective burdens, the Court may only grant summary judgment for the defendant if the record allows the Court to find, as a matter of law, that the pre-existing condition was the sole cause of the plaintiff's injury. *See Perl v. Meher*, 18 N.Y.3d 208, 219 (2011).

### B. The United States Has Established a Prima Facie Case that Plaintiff's Injuries Were Not Caused by the Accident

The United States relies principally on two sources to establish its prima facie case that Plaintiff's injuries were not caused by the 2019 Accident: (1) Dr. Fischer's medical opinion that Plaintiff's injuries pre-existed the accident; and (2) Dr. Serina's biomechanical opinion that the 2019 Accident could not have caused Plaintiff's injuries. The Court finds that these sources establish a prima facie case that Plaintiff's injuries were not caused by the 2019 Accident.

1. Dr. Fischer's Conclusions

The United States relies on Dr. Fischer's opinion that the injuries Plaintiff claimed after the 2019 Accident are solely attributable to his prior motor vehicle accidents in 2014 and 2017. Dr. Fischer's ultimate conclusion is that "[Plaintiff] sustained no injury to the cervical spine and a temporary aggravation of pre-existing and established lumbar paraspinal sprain after the [2019] [A]ccident that has since been resolved." (Fischer Report, Dkt. 61-2, at 12.) To form this opinion, Dr. Fischer looked to two key facts. First, in reviewing Plaintiff's prior medical history, she found that as of 2017, before the 2019 Accident, Plaintiff showed "advanced disc degeneration C5-6 and C6-7 and uncovertebral hypertrophy." (*Id.* at 11.) Furthermore, she found that the January 2019 imaging after the accident showed "disc bulging," a "cyst," "disc herniation," and "bilateral foraminal stenosis," all of which she explained are "chronic degenerative findings." (*Id.*) She attributes Plaintiff's surgery shortly after the 2019 Accident to the "coinciden[ce]" of his getting an MRI only after the 2019 Accident. (*Id.* at 11–12.) In other words, Dr. Fischer concludes that Plaintiff had pre-existing ailments that were discovered because of the MRI that Plaintiff received after the 2019 Accident, so the surgery recommendation shortly after the accident does not mean that the 2019 Accident created the need for surgery. Second, Dr. Fischer concluded that Plaintiff showed "no evidence of an acute trauma of the lumbar spine after the [2019] [A]ccident." (*Id.* at 11.) Specifically, Dr. Fischer explains that "if a patient was experiencing spinal issues due to acute trauma," one "would expect to see a fracture or evidence of bleeding such as a hematoma" in the medical imaging, but none was present in Plaintiff's imaging. (Fischer Decl., Dkt. 61, ¶ 8.)

Dr. Fischer's reasoning and conclusions are substantially similar to numerous cases in this Circuit in which courts have found doctors' expert opinions to satisfy the defendants' prima facie burden of showing a lack of causation. *See, e.g.*, *Comba*, 535 F. Supp. 3d at 111–12 (concluding that defendant had carried its burden where the expert "opined that [p]laintiff's condition '[wa]s

more consistent with a chronic pre-existing condition' and that the collision was not 'related in any way to her right shoulder symptoms'" and collecting cases with similar conclusions (citation omitted)); *Smith v. Gray*, No. 21-2035-CV, 2022 WL 1418973, at *2 (2d Cir. May 5, 2022) (summary order) (affirming district court's conclusion that defendants had presented prima facie case of a lack of causation where defendants' experts made similar medical findings as to MRIs showing evidence consistent with "age-related degeneration or a long-standing previous accident" (citation omitted)); *Manzi v. Davey Tree Expert Co.*, 977 F. Supp. 2d 150, 158 (E.D.N.Y. 2013) (concluding that a doctor's report finding that plaintiff's MRI did not demonstrate any tears or fractures and instead showed a pre-existing condition was sufficient to "establish a prima facie case that [p]laintiff did not sustain a serious injury to his right knee causally related" to the accident).

Plaintiff raises four arguments to rebut the conclusion that Dr. Fischer's opinion presents a prima facie case that the 2019 Accident did not cause Plaintiff's injuries. None are persuasive. Plaintiff argues that it is inconsistent for Dr. Fischer to have found that his injuries have been "resolved" in light of his extensive recent medical history. (Pl.'s Mem. Opp'n Defs.' Summary J. Mot. ("Pl.'s Opp'n"), Dkt. 67, at 3–4.) Similarly, Plaintiff argues that Dr. Fischer failed to address the fact that his range of motion remains limited as of at least December 2022. (*Id.* at 5.) However, even accepting both of these arguments, they only relate to whether Plaintiff is seriously injured, not causation. In moving for summary judgment, the United States relies on Dr. Fischer's opinion only as to *causation*, regardless of whether Plaintiff can prove he is seriously injured. (*See* Defs.' Reply Supp. Mot. Summ. J. ("Reply"), Dkt. 70, at 3 (United States noting it does not contest for purposes of summary judgment whether Plaintiff suffers from a "serious injury," only whether the United States' acts were the proximate cause, and "reserv[ing] the right to argue [the serious injury]

point at trial").) Therefore, even assuming these are material inconsistencies and omissions in Dr. Fischer's report, they do not in any way undermine her conclusions as to causation.

Third, Plaintiff argues that Dr. Fischer's report acknowledges that Plaintiff "did in fact suffer acute injuries as a direct result of the [2019] Accident." (Pl.'s Opp'n, Dkt. 67, at 3.) To the extent Plaintiff is arguing that Dr. Fischer found that Plaintiff suffered "serious injury" for purposes of the No-Fault regime, that argument is simply incorrect; otherwise, it is meaningless. The portions of Dr. Fischer's report that Plaintiff points to merely reflect Dr. Fischer's finding that the 2019 Accident "aggravate[ed]" Plaintiff's "pre-existing and established paraspinal sprain," (*id.* (quoting Fischer Report, Dkt. 61-2, at 11–12)), which the United States argues "is not a 'serious injury' within the meaning of the No Fault Law," (Defs.' Mem. Supp. Mot. Summ. J., Dkt. 60, at 8).[8] Indeed, the only injury that the United States and Dr. Fischer acknowledge—"temporary aggravation of a pre-existing and established lumbar paraspinal sprain" that "usually resolves within three to six months" and generally does not impact daily living activities, (*see* Fischer Decl., Dkt. 61-2, ¶ 7)—does not qualify as a "serious injury." *See Patrello v. United States*, 757 F. Supp. 216, 222 (S.D.N.Y. 1991) (concluding that "a mild sprain in [plaintiff's] upper back [sustained] during the accident that healed within six to eight weeks and, at most, [gave plaintiff] some discomfort from time to time" did not qualify as a "serious injury"); *Tipping-Cestari v. Kilhenny*, 571 N.Y.S.2d 525, 526 (2d Dep't 1991) (concluding that reports of "a cervical and lumbar sprain, with an unspecified degree of restriction of cervical motion" were "insufficient to establish" that the plaintiff suffered a serious injury); *Iglesias v. Inland Freightways, Inc.*, 619 N.Y.S.2d 59, 60

[8] The Court requested additional briefing on this "serious injury" issue to ensure that Plaintiff had an opportunity to adequately respond. (*See* 07/29/2026 Dkt. Order.) Plaintiff's response did not argue that the "temporary aggravation" that the United States concedes was caused by the 2019 Accident qualified as a "serious injury." (*See generally* Pl.'s Ltr., Dkt. 71 (discussing causation).)

(2d Dep't 1994) (similar). Thus, because this aggravation and sprain, to the extent conceded, is not a "serious injury," Dr. Fischer's acknowledgment that these injuries were caused by the 2019 Accident does not undermine her opinion that the 2019 Accident did not cause Plaintiff to suffer any "serious injuries," as defined by the No-Fault law.

Finally, Plaintiff argues that "Dr. Fischer's opinions are problematic [because] her purported explanation for why [Plaintiff] underwent emergency lumbar surgery twelve days after the Accident was: '[Plaintiff] underwent a laminectomy and facet excision very acutely after the car accident, but this is coincidental since the MRI was done right after the accident.'" (Pl.'s Opp'n, Dkt. 67, at 4 (quoting Fischer Report, Dkt. 61-2, at 12).) Plaintiff contends that Dr. Fischer inadequately explained her conclusion that the timing of the surgery was merely "coincidental" and not reflective of the 2019 Accident having caused the need for surgery. (*See id.* at 4–5.) However, Dr. Fischer more than adequately explained her conclusion. Dr. Fischer reasoned that Plaintiff's MRIs showed disc bulging, a facet cyst, disc herniation, and foraminal stenosis, all of which she explained are "*chronic* degenerative findings." (Fischer Report, Dkt. 61-2, at 11 (emphasis added).) Dr. Fischer further explained that a "facet cyst develops *slowly* over time" and "the stenosis at L3-4 was due to disc bulging and facet arthrosis, both are changes that *take time to develop*." (*Id.* (emphases added).) Thus, the long-term nature of the conditions that necessitated Plaintiff's "laminectomy and facet cyst excision"—which Dr. Fischer specifically identified in her report—amply supported her conclusion that the fact that Plaintiff's surgery took place soon after the 2019 Accident was "coincidental" and not indicative of injuries he suffered from the accident. (Fischer Report, Dkt. 61-2, at 11–12.) It just so happened that the MRI "done right after [and because of] the accident" revealed what are, according to Dr. Fischer, Plaintiff's longstanding degenerative back conditions. (*Id.*) Dr. Fischer's detailed explanation of her opinion about the

timing of Plaintiff's back surgery amply rebuts Plaintiff's contention that Dr. Fischer's dismissal of the relevance of the timing was unreasoned.

Dr. Fischer's report is sufficiently persuasive evidence to meet the United States' burden of demonstrating that Plaintiff's alleged pain and injuries were not caused by the 2019 Accident and justify shifting the burden to Plaintiff to present evidence that creates a factual dispute precluding summary judgment on this issue.

2. Dr. Serina's Conclusions

The United States' second source of evidence supporting a lack of causation is the expert report of Dr. Serina, a biomechanical expert. In preparing her report, Dr. Serina reviewed documentary evidence of the 2019 Accident, including videos and photographs. She concluded that "the impact to Plaintiff's vehicle resulted in a change of velocity "of less than 1 mile per hour" such that "the forces in the lumbar spine of [Plaintiff] were extremely low, and significantly less than those experienced during common activities." (Serina Decl., Dkt. 62, ¶¶ 5, 7.) As a result, she opined that "the mechanism for structural damage to the tissues of the lumbar spine (such as the intervertebral discs) was not present" during the 2019 Accident. (*Id.* ¶ 8.)

Plaintiff raises a number of arguments in favor of the Court disregarding Dr. Serina's conclusions. First, Plaintiff argues that Dr. Serina's opinion should be excluded pursuant to Federal Rule of Evidence 702 because, given the relative simplicity of the 2019 Accident and the availability of clear video evidence, Dr. Serina's expert opinion as to the force of the collision is not "require[d] . . . to help the trier of fact to understand the evidence." (Pl.'s Opp'n, Dkt. 67, at 6 (citing Fed. R. Evid. 702)); *see* Fed. R. Evid. 702 ("A witness who is qualified as an expert . . . may testify . . . [if] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]"). However, Plaintiff cites no authorities supporting the exclusion of this type of biomechanical expert opinion at summary

judgment in similar cases, and the case law in fact largely rejects Plaintiff's argument. For example, in considering a *Daubert* motion pursuant to Federal Rule of Evidence 702 in an accident case involving a car and a tractor-trailer, where video of the incident was available, a court in this District concluded:

> [The Biomechanical expert's] opinion is certainly relevant to the issues in this case. His specialized expertise in biomechanics, an issue that is complex and technical, is one that will also assist the jury in understanding causation of injury. The parties may disagree as to the conclusions reached by [the biomechanical expert], "but ultimately the jury will be the judge of whether [p]laintiff's alleged injuries were caused by the accident, and it is the jury's responsibility to assess what weight to give the proffered testimony as it attempts to answer this question."

*Evers v. Hoffman*, 822 F. Supp. 3d 295, 306 (E.D.N.Y. 2026) (quoting *Nicolas v. ABF Freight Sys.*, No. 19-CV-6513 (HG) (JAM), 2024 WL 915179, at *2 (E.D.N.Y. Jan. 24, 2024)). Similarly, in a slip-and-fall case, another court rejected a challenge to a biomechanical expert's opinion, where video of the slip-and-fall was available, because the expert's "opinion on the mechanisms and forces at work that lead a person to slip and fall while walking, [wa]s helpful to assist the jury in determining how [p]laintiff slipped and fell," which "are not matters that can be directly observed by the jury, and are not matters of common knowledge or common sense." *Ervin v. Kroger*, No. 4:14-CV-0262 (ALM), 2015 WL 11089475, at *4 (E.D. Tex. June 3, 2015). While Plaintiff may seek to exclude Dr. Serina's opinion later, on other grounds, in advance of trial, his objections to Dr. Serina's opinion at this stage are unpersuasive, (*see, e.g.*, Pl.'s Opp'n, Dkt. 67, at 6–8 (advancing two pages of *Daubert* exclusion arguments without a single citation to a comparable case)). The Court, therefore, finds no reason to disregard Dr. Serina's opinion in determining whether the United States has established its prima facie case as to a lack of causation.

Next, Plaintiff takes issue with Dr. Serina's reliance on documentary evidence and not on in-person inspections of the vehicles, the accident scene, or Plaintiff, as well as Dr. Serina's

reliance on biomechanical studies rather than the particulars of the 2019 Accident and Plaintiff's anatomy. (*Id.* at 7.) But Plaintiff "cites no case law supporting his contention that [the biomechanical expert] was required to perform any in-person inspection of the vehicles or Plaintiff, rather than relying on evidence in the record." *See Mideum Jung v. Kelly*, No. 16-CV-6097 (PK), 2020 WL 7024395, at *12 (E.D.N.Y. Nov. 30, 2020). Furthermore, "any objections to [the biomechanical expert's] assumptions—such as the weight of Plaintiff's vehicle at the time of the accident or the equivalency of Plaintiff and the [the humans analyzed in the expert's scientific studies]—go to the *weight* of expert testimony and not its admissibility." *See Manlapig v. Jupiter*, No. 14-CV-0235 (LGS), 2016 WL 916425, at *4 (S.D.N.Y. Mar. 10, 2016) (emphasis added) (citation omitted); *Mideum Jung*, 2020 WL 7024395, at *12 (dismissing challenges to expert analysis as requiring "credibility determinations, which are not appropriate on summary judgment").

Plaintiff also argues that Dr. Serina's opinion is undermined by the fact that Ms. Reneau, the other driver in the 2019 Accident, testified that the force of the impact was "medium," (Pl.'s Opp'n, Dkt. 67, at 8), and that she was taken from the scene of the accident by ambulance, complaining of discomfort to her left shoulder and left leg, (*id.*). Again, these arguments speak to the weight owed to Dr. Serina's conclusions, not whether the Court can consider them as evidence to establish the United States' prima facie case at this stage.

Finally, Plaintiff argues that the Court should not consider Dr. Serina's opinion because she is not a medical doctor. (*Id.* at 7.) To be sure, courts "have not permitted biomechanical experts to testify regarding specific injury causation, or the specific cause of a particular injury, unless the expert has medical training." *Hai Long Du v. Party Perfect Rentals LLC*, 731 F. Supp. 3d 392, 399 (E.D.N.Y. 2024) (emphasis omitted) (quoting *Thomas v. YRC Inc.*, No. 16-CV-6105

(AT) (HBP), 2018 WL 919998, at *5 (S.D.N.Y. Feb. 14, 2018)). But, "[i]t is well settled that biomechanical experts are permitted to opine as to general causation of injuries in motor vehicle accident cases; *i.e.*, whether the force sustained by a plaintiff in the subject accident *could potentially* cause certain injuries." *Id.* (emphasis added) (quoting same); *see also Oh v. Trujillo-Montoya*, No. 21-CV-1042 (RPK) (PK), 2024 WL 1282417, at *10 (E.D.N.Y. Mar. 25, 2024) ("[C]ourts in New York have routinely relied on biomechanical expert reports in finding defendants to have made out a prima facie case for lack of causation." (collecting cases)), *aff'd sub nom. Oh v. HYS Livery Serv., Inc.*, No. 24-1111-CV, 2025 WL 967692 (2d Cir. Mar. 31, 2025). Here, the United States is offering Dr. Serina's opinion to support the contention that the impact of the collision was so minimal that it could not have caused serious injury, not to argue the specific causation of Plaintiff's claimed injuries. (*See* Defs.' Reply, Dkt. 70, at 7.) Thus, Dr. Serina's biomechanical opinion can be "persuasive evidence" that Plaintiff's alleged pain and injuries were not caused by the 2019 Accident even though she is not qualified to speak to the specific cause of Plaintiff's claimed injuries. *See Mideum Jung*, 2020 WL 7024395, at *11–12 (finding that defendants had established their prima facie case based *solely* on a biomechanical expert's opinion that "the subject accident did not create the injury mechanisms necessary to cause" the plaintiff's injuries (citation omitted)).

In sum, Dr. Serina's report further supports the Court's finding that the United States has carried its burden to present "persuasive evidence" as to the lack of causation.

**C. Plaintiff's Evidence Creates a Genuine Factual Dispute as to Causation**

In response to the United States' prima facie case that the 2019 Accident was not the cause of Plaintiff's injuries, Plaintiff offers three sets of evidence that he argues create a triable issue of fact and thus preclude summary judgment: (1) his account of the 2019 Accident and his injuries, (2) Dr. McMahon's report, and (3) the reports of Drs. Lager, Nipper, and Weinstein. (Pl.'s Opp'n,

Dkt. 67, at 19–23.) The Court considers only Dr. McMahon's report as a possible rebuttal to the United States' prima face case of no causation.

Plaintiff's own account of his injuries, in itself, is irrelevant to this summary judgment motion regarding causation. *See Kang v. Romeo*, No. 18-CV-4033 (ARR) (SMG), 2020 WL 4738947, at *8 (E.D.N.Y. Aug. 14, 2020) ("[A] plaintiff's self-serving and conclusory statements regarding causation are insufficient to raise a triable issue of fact if not corroborated by objective medical evidence."); *Rhone v. United States*, No. 04-CV-5037 (PKL), 2007 WL 3340836, at *9 (S.D.N.Y. Nov. 9, 2007) (similar); *Carter v. Full Serv., Inc.*, 815 N.Y.S.2d 41, 43 (1st Dep't 2006) (similar); *see also Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) ("[E]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." (citations omitted)).

Meanwhile, each of Drs. Lager, Nipper, and Weinstein failed to form an opinion that was informed by a review of Plaintiff's pre-2019 Accident medical history. (*See* Dkt. 68, ¶¶ 5, 20, 28 (Dr. Lager); Dkt. 65-5, at ECF 432 (Dr. Weinstein); Dkt. 66-4, at ECF 10 (Dr. Nipper).) The Court therefore finds none of these reports to be worthy of consideration in establishing a dispute as to causation, since the existence and effect of any pre-existing conditions on Plaintiff's post-2019 Accident medical complaints were not considered at all. *See Wirt v. United States*, No. 10-CV-5073 (PKC) (ST), 2017 WL 1229726, at *12–13 (E.D.N.Y. Mar. 31, 2017), *aff'd*, 732 F. App'x 32 (rejecting doctor's expert opinion as rebutting the defendant's showing as to causation where reports failed to acknowledge any pre-accident medical history or otherwise explain the basis for her "conclusion that [plaintiff]'s physical and mental deficits were caused by the [disputed] accident, as opposed to her pre-existing medical conditions"); *Conde*, 2021 WL 3604701, at *10

("[T]he other medical reports referred to by plaintiff are unreliable[, and therefore did not create a genuine dispute of fact as to causation], as plaintiff failed to adequately disclose his medical history to the doctors that examined him."); *Pommells*, 4 N.Y.3d at 573–75 (finding dismissal of plaintiff's complaint proper where plaintiff's expert opined that his symptoms were "causally related to the history as stated," which included both the accident and plaintiff's kidney surgery, but "left wholly unanswered the question whether the claimed symptoms diagnosed" were caused by the accident); *cf. Barth v. United States*, No. 22-CV-1155 (NJC) (JMW), 2025 WL 2753721, at *9 (E.D.N.Y. Sep. 29, 2025) (precluding expert from "offering at trial any opinions that 'specifically negate' the[ ] other alternative possible causes' of [plaintiff]'s injuries" since doctor had failed to consider any of the three traumatic accidents that preceded the accident in dispute).

Dr. McMahon's report, however, presents a closer call and ultimately is sufficient evidence to raise a triable issue of fact that precludes summary judgment with respect to causation. Dr. McMahon examined Plaintiff multiple times after the 2019 Accident. Regarding causation, Dr. McMahon opines "to a reasonable degree of medical certainty" that Plaintiff's "injuries are the direct result of the January 10, 2019 accident," and that Plaintiff "suffered acute injuries, as well as aggravation/exacerbation injuries to his lumbar spine as a result of the accident on January 10, 2019," (McMahon Decl., Dkt. 69, ¶ 40), "to the point that the pain became unbearable and the [Surgery] needed to be performed twelve (12) days later," (*id.* ¶ 19).

Dr. McMahon explains that the following facts inform his causation opinion: (1) "[f]ollowing the motor vehicle accident on October 3, 2017, [Plaintiff] returned to full time work as a truck driver, returned to exercising, and returned to his other activities of daily living"; (2) "[n]one of the doctors that [Plaintiff] treated with prior to his January 10, 2019 motor vehicle accident had ever discussed surgery with him"; and (3) "[Plaintiff] informed [Dr. McMahon] that

he had not experienced any neck or lower back pain in the approximate fifteen (15) months prior to his January 10, 2019 motor vehicle accident." (*Id.* ¶ 12.)

The United States argues that this evidence is insufficient to rebut its prima facie case because Dr. McMahon "ignores the signs of chronic degeneration in Plaintiff's spine" and "fails to analyze in any depth why Plaintiff's injuries are attributable to the low-speed sideswipe that occurred during this Accident, rather than the chronic degenerative condition." (Defs.' Reply, Dkt. 70, at 4.) Dr. McMahon, the United States contends, "also ignores Plaintiff's documented prior complaints of back pain, most notably the year of back pain preceding the [2019] Accident" and does not "address how the [2019] Accident could have caused the injuries that Plaintiff complained of days afterward when there were no signs of acute injury in Plaintiff's medical imaging whatsoever [at that time]." (*Id.*) But, as discussed with respect to Dr. Serina's expert opinions, the United States' concerns with Dr. McMahon's expert opinion go to the *weight* of the opinion to be afforded by the trier of fact, and should not be decided by the Court at this stage of the proceedings. *See Manlapig*, 2016 WL 916425, at *4. For example, it will be for the jury to decide which expert to believe regarding whether the MRI and X-ray taken immediately after the 2019 Accident show a longstanding degenerative condition that required surgery as opposed to a condition caused by the 2019 Accident. Furthermore, the United States largely disregards the fact that Dr. McMahon based his conclusion in part on the drastic changes in Plaintiff's condition before and after the 2019 Accident. For over a year before the 2019 Accident, Plaintiff was working full time, was not experiencing pain, and did not visit doctors for any medical treatment related to back injuries, and no doctor had ever recommended that he undergo surgery for any back issues, much less explain that surgery was necessary and urgent. Since the 2019 Accident, Plaintiff has required substantial ongoing medical treatment and, according to his treating physicians, his

condition interferes with daily activities, and he is unable to return to work. He also required urgent back surgery after the 2019 Accident that had not been recommended before in response to his prior injuries. These are objective facts that Dr. McMahon relied on to support his opinion as to causation; his opinion is therefore not entirely conclusory or based purely on Plaintiff's subjective complaints.[9]

The United States will have the opportunity to point to these purported weaknesses in Dr. McMahon's opinion to undermine his credibility at trial. But the Court cannot grant summary judgment where there is a genuine material dispute between the medical opinions as to causation. *See Yongjae Kim v. Stewart*, No. 18-CV-2500 (SLC), 2021 WL 1105564, at *7 (S.D.N.Y. Mar. 23, 2021) (denying summary judgment as to causation because "[d]efendants, in effect, ask the [c]ourt to make a credibility determination and disregard certain evidence, but it is well established that '[a]ssessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment'" (second alteration in original) (quoting *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015))).

The United States' authorities, one of which is a case in which Dr. McMahon was the expert, are not to the contrary. First, it cites *Conde*, in which the district court granted summary judgment to the defendant after finding that Dr. McMahon's opinion was insufficient to raise a genuine dispute of material fact regarding causation. 2021 WL 3604701, at *9–12. But in *Conde* the court found that Dr. McMahon's opinion was entirely conclusory and unjustified because he

[9] *See, e.g.*, *Giap v. Hathi Son Pham*, 71 N.Y.S.3d 504, 506 (1st Dep't 2018) ("To the extent plaintiff's physicians asserted that [the] plaintiff [ ] had degenerative joint disease which was common for her age, that she was previously asymptomatic, that the accident aggravated her underlying degenerative joint disease, and that trauma 'increases the rate of disc desiccation,' rendering her now symptomatic, this was sufficient to raise an issue of fact as to causation." (citation omitted).)

had "altogether ignore[d] relevant aspects of plaintiff's medical history," *id.* at *10, and "testified that he could not definitively rule out the possibility that the injuries in question were caused by a degenerative condition," *id.* at *11. Conversely, here, Dr. McMahon clearly considered Plaintiff's pre-accident medical history, addressed that history—albeit briefly—and concluded that the injuries were caused by the 2019 Accident. *See Spencer v. Golden Eagle, Inc.*, 920 N.Y.S.2d 24, 26 (1st Dep't 2011) (affirming denial of summary judgment where "the treating physician's conclusions regarding causation [we]re supported by medical records, wherein he acknowledge[d] some pre-existing injuries but attributes specific other injuries to the accident"). The fact that the same expert's opinion was rejected in *Conde* because it was conclusory does not mean his opinion here, which, as discussed, is based on certain objective facts unique to this case, must be disregarded in this case. The United States' only other cited authority, this Court's decision in *Wirt*, 2017 WL 1229726, is even further afield. In *Wirt*, the Court found that the plaintiff did not rebut the defendant's evidence regarding a lack of causation where the plaintiff had entirely failed to point to anything in the record that supported the expert's conclusion as to causation or any evidence that the expert had reviewed the plaintiffs' medical records from before the accident in question. *Id.* at *12–13. The Court, therefore, is not persuaded by either *Conde* or *Wirt* that summary judgment is appropriate here on the issue of causation.

## II. DHS is an Improper Defendant and Must Be Dismissed

Plaintiff's claims against DHS must be dismissed for lack of subject-matter jurisdiction because it is an improper party under the FTCA. The FTCA is a limited waiver by the United States of its sovereign immunity for claims "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Where a claim falls within the scope of the FTCA, this limited waiver permits suits against the United States, but not federal agencies. *See Id.* § 2679(a);

*Shaw v. United States Marshall*, No. 24-CV-5644 (HG) (LB), 2024 WL 4574146, at *2 (E.D.N.Y. Oct. 24, 2024) ("The FTCA authorizes suits only against the United States and not against federal agencies or individuals." (citing *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991))). DHS is a federal agency and accordingly is not a suable entity under the FTCA.[10] The Court therefore lacks subject-matter jurisdiction over Plaintiff's claims against DHS and dismisses it from this case.

**CONCLUSION**

For the reasons explained above, Defendants' motion for summary judgment is denied, except as to Plaintiff's claims against Defendant DHS which are dismissed with prejudice. Plaintiff and Defendant United States shall submit a Joint Pretrial Order in accordance with the Court's Individual Practices and Rules no later than November 6, 2026, including proposed trial dates for no later than February 2027.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 23, 2026
Brooklyn, New York

[10] Plaintiff does not address this issue, let alone present any arguments to the contrary. (*See generally* Pl.'s Opp'n, Dkt. 67.)